**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| KELLY LA GALE MCSEAN,       ) | |
| )                            | |
| Plaintiff,          ) | |
| )                            | |
| vs.                         ) | Case No. 4:23-cv-01225-MTS |
| )                            | |
| CHRIS CHAMBERLAIN, *et al.*, ) | |
| )                            | |
| Defendants.         ) | |

**MEMORANDUM AND ORDER**

This Court previously granted Plaintiff's Application to Proceed in District Court without Prepaying Fees or Costs and assessed an initial partial filing fee. *See* Doc. [7]; *see also* 28 U.S.C. § 1915(a)–(b). This matter now is before the Court on initial review of Plaintiff's Complaint. *See* § 1915(e)(2); *see also id.* § 1915A(a). After a careful and complete review of the Complaint, the Court concludes that all the claims within it are frivolous, fail to state a claim upon which relief may be granted, or seek monetary relief against a defendant who is immune from such relief. For that reason, the Court will dismiss Plaintiff's action. *Id.* § 1915(e)(2)(B); *id.* § 1915A(b)(1).

**I.    Standard of Review**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). In reviewing a complaint, the Court assumes its factual allegations are true and makes all reasonable inferences in favor of the plaintiff, but the Court "need not accept as true a plaintiff's conclusory

allegations or legal conclusions drawn from the facts." *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019). The complaint must allege facts supporting each element of the plaintiff's claims, and the claims cannot rest on mere speculation. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Further, the complaint "must allege more than '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements'" and instead must "allege sufficient facts that, taken as true, 'state a claim to relief that is plausible on its face.'" *K.T. v. Culver-Stockton Coll.*, 865 F.3d 1054, 1057 (8th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The plausibility of a complaint turns on whether the facts alleged allow a court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Lustgraaf v. Behrens*, 619 F.3d 867, 873 (8th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678). When a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

In this action, Plaintiff is proceeding pro se. The Supreme Court has explained that a document filed pro se is "to be liberally construed," and, specifically, it has explained that "a pro se complaint, however inartfully pleaded, must be held to less

stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). The U.S. Court of Appeals for the Eighth Circuit has explained that giving a complaint "liberal construction" means "that if the essence of an allegation is discernible . . . then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). While the practice to construe pro se pleadings liberally is a longstanding one within the Eighth Circuit, courts must be careful not to "cross the permissible boundary" to reach claims that a complaint "cannot reasonably be construed" to raise. *See Bracken v. Dormire*, 247 F.3d 699, 702–03 (8th Cir. 2001); *accord Stone*, 364 F.3d at 914 (quoting *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989) (explaining that even for a pro se plaintiff, the court "will not supply additional facts" nor "construct a legal theory for plaintiff that assumes facts that have not been pleaded")); *see also Davis v. Smith*, 638 F.2d 66, 69 (8th Cir. 1981) (Henley, J., dissenting) (opining that while courts should construe pro se pleadings "liberally in an effort to achieve substantial justice," courts "should not expand the case beyond fair articulation of [a litigant's] claim").

**II.   Discussion**

Plaintiff currently is an inmate within the St. Francois County Jail. But Plaintiff's Complaint, brought under 42 U.S.C. § 1983, involves events that took place while Plaintiff was civilly committed in Southeast Missouri Mental Health Center

- 3 -

("SMMHC"). Plaintiff names as Defendants several individuals the Complaint identifies as SMMHC staff members: (1) Chris Chamberlain, (2) Jeff Cunningham, (3) Denise Hacker, (4) Misty Kindle, (5) William Anderson, (6) Adam Cooper, and (7) Jeremy Crice. Plaintiff brings the claims against each Defendant in both their individual and official capacities.

    a.    <u>Plaintiff's Allegations</u>

Plaintiff's Complaint alleges that SMMHC "required" "pat search[es]" during "each shift." Doc. [1] at 9. Plaintiff does not challenge that general requirement. Rather, Plaintiff's claims arise from a specific search that occurred on December 30, 2021. Plaintiff alleges that, on that day, she had complied with the required pat searches until around 1:30 p.m. to 1:45 p.m., when Defendant Crice asked Plaintiff "to submit to a pat search for the 3–11 shift." *Id.* But because the 3:00 to 11:00 shift "was not there" yet, and "would not start arriving until 2:20 p.m.," and because other "staff were not there to witness the pat search," Plaintiff refused. *Id.* at 10. Defendant Crice reported Plaintiff's "refusal" to a nurse, Krystal Weinhold. Nurse Weinhold in turn called security.

"Security then came to the ward" and "asked if [Plaintiff] would submit to the pat search." *Id.* Plaintiff says she allowed the "security officers to do as they wished." *Id.* at 11. But Defendant Chamberlain, who Plaintiff describes as the "head of security," "demanded" that Plaintiff submit to a "strip search." *Id.* Eight "security and staff" members then used a litter to take Plaintiff from a common room to the privacy of her

room. *Id.* at 11–12. "Once [Plaintiff] was transported to [her] room," none of the individuals who transported her were asked to step out and "no kind of shield was used to keep everybody from full view." *Id.* at 12. Plaintiff alleges that some of the Defendants then began conducting the strip search and removed Plaintiff's clothing. A Defendant removed Plaintiff's sandals, socks, and shorts. When a Defendant removed Plaintiff's underwear, Plaintiff alleges one Defendant stated, "It's a boy," and that some Defendants laughed at the remark.[1] *Id.* at 13. Plaintiff states that one of the Defendants "lifted [Plaintiff's] testicles," "observing them," and then, "with what felt like [a Defendant's] thumb and index finger[,] touched [Plaintiff's] penis." *Id.* at 13–14.

Plaintiff's Complaint lists a variety of mental and emotional injuries she suffered from this event, which she says can be substantiated by "mental health employees." She delineates her injuries as "humiliation," "embarrassment," "fear of authority figures," "anxiety/uncontrollable thoughts," "mental anguish," "sleep depravation," "undue worry," "undue stress," "past traumatic events/experiences," "bondage issues," "crying spells," "suicidal tendencies/thoughts," "legal issues/legal problems,"[2] "depression," and "health problems."[3] *Id.* at 52–55. For "relief," Plaintiff asks for

---

[1] Plaintiff, a "transgender woman" who formerly "was known as Larry J. Bemboom," Doc. [1] at 2–3, explains that at the time of the search she "had male genitalia" but "lived as a female woman," *id.* at 9.

[2] Plaintiff explains this injury saying, "when more stressful situations arose, I reacted in such a way that it caused me legal problems." Doc. [1] at 54–55.

[3] Plaintiff explains this injury saying, "my blood pressure has reached levels that are and were extremely high. I refused meds for the longest time hoping this would help me to end things." Doc. [1] at 55.

money damages from each Defendant for each of her aforementioned injuries. *Id.* at 56–60.

    b.    <u>Plaintiff's Claims</u>

Plaintiff's Complaint does not delineate specific counts. Rather, sprinkled throughout the narrative of her allegations, Plaintiff seems to identify several different claims she purports to bring in this action that the Court will consider. *See Solomon*, 795 F.3d at 787. The Complaint references the violation of her right to petition the government for a redress of grievances under the First Amendment because some of the Defendants, she alleges, refused to provide her with a list of the names of individuals involved in this incident. She also references Missouri Revised Statute section 575.020, which is a Missouri criminal statute for concealing an offense. She raises her rights under the Fourth Amendment to be secure in her person against unreasonable searches and seizures. She references "the offense of assault and battery" and "sexual assault." Elsewhere she cites the Fifth and Fourteenth Amendments for her "right to due process and equal protection under the law."

    1. *Plaintiff's Frivolous Claims*

Section 1915A(b) of title 28 requires the Court to dismiss "any portion of" Plaintiff's Complaint if it is frivolous. 28 U.S.C. § 1915A(b)(1); *accord id.* § 1915(e)(2)(B)(i). A claim is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). When applied to a claim, the term *frivolous* "embraces not only the inarguable legal conclusion, but also the

fanciful factual allegation." *Id.* After a careful review of her entire Complaint, the Court will summarily dismiss as frivolous all of Plaintiff's claims except for the claim against Defendants in their individual capacities arising under the Fourth Amendment. Except for Plaintiff's Fourth Amendment claim, her claims rely on "indisputably meritless" legal theories. *See Taylor v. Johnson*, 257 F.3d 470, 472 (5th Cir. 2001) (per curiam). They are frivolous and subject to dismissal.[4]

2. *Plaintiff's Fourth Amendment Claim*

Though Plaintiff's claim under the Fourth Amendment is not frivolous, the Court concludes that it does not state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915A(b)(1); *id.* § 1915(e)(2)(B)(ii). The Court further concludes that even if Plaintiff's Complaint does state a claim under the Fourth Amendment, Defendants here are shielded by qualified immunity. As such, even if Plaintiff does state a claim under the Fourth Amendment, her claim seeks monetary relief from defendants who are immune from such relief and, therefore, is subject to dismissal. *Id.* § 1915A(b)(2); *id.* § 1915(e)(2)(B)(iii).

---

[4] Included among Plaintiff's frivolous claims are the claims she brought against Defendants in their official capacities. "A suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). These claims, therefore, are against the state of Missouri. Section 1983 of title 42 "provides for an action against a 'person' for a violation, under color of law, of another's civil rights," *McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008), but "neither [Missouri] nor its officials acting in their official capacities are 'persons' under § 1983," *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989). In addition, Plaintiff's official capacity claims also are subject to dismissal because the Eleventh Amendment bars them. *See Murphy v. Arkansas*, 127 F.3d 750, 754 (8th Cir. 1997).

The Court has no doubt that Plaintiff's strip search was unpleasant; there is no other kind of strip search. *See Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 566 U.S. 318, 341 (2012) (Alito, J., concurring) (calling visual strip searches "undoubtedly humiliating"); *id.* at 344 (Breyer, J., dissenting) (calling strip searches "inherently . . . humiliating"). But the question before the Court under the Fourth Amendment is on the search's reasonableness. The Eighth Circuit has held that involuntarily civilly committed persons—like Plaintiff at the time of this incident— retain Fourth Amendment rights analogous to pretrial detainees. *Serna v. Goodno*, 567 F.3d 944, 948–49 (8th Cir. 2009). The Supreme Court has "articulated a balancing test for determining whether searches conducted on pretrial detainees were reasonable under the Fourth Amendment." *Id.* (citing *Bell v. Wolfish*, 441 U.S. 520 (1979)). In *Bell* the Supreme Court stated:

> The test of reasonableness . . . requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

*Bell*, 441 U.S. at 559.

Applying *Bell*'s balancing test in *Serna*, the Eighth Circuit found the visual body-cavity search of a civilly committed man was reasonable. 567 F.3d at 955–56. There, officials at a facility for civilly committed persons found a cellphone case in a common area accessible by patients, staff, and some visitors. *Id.* at 946–47. When officials were unable to determine to whom it belonged, they "instituted facility-wide, visual body-

cavity searches of all [approximately 150] patients," but never located a cellphone. *Id.* In finding the "invasive" search of the plaintiff reasonable, the Eighth Circuit noted the defendants' "genuine and serious" security and treatment concerns. *Id.* at 955. It noted that the defendants conducted the searches "privately, safely, and professionally." *Id.* The panel added, though, that it viewed the *Serna* search "as an outer limit under the *Bell* test" and "caution[ed] facility administrators to recognize that courts' deference under *Bell* is not without limits." *Id.* at 956.

After the Eighth Circuit decided *Serna*, the Supreme Court decided the case of *Florence v. Board of Chosen Freeholders of the County of Burlington*. There, the Court held that "every detainee who will be admitted to the general population [of a jail] may be required to undergo a close visual inspection while undressed." *Florence*, 566 U.S. at 322. The Court emphasized that courts "must defer" to the judgment of facility officials "unless the record contains substantial evidence showing their policies are an unnecessary or unjustified response" to security. *Id.* at 322–23. A short time after *Florence*, the Eighth Circuit rejected a challenge to a facility's policy of performing unclothed body searches before civilly committed patients left a secure perimeter. *Beaulieu v. Ludeman*, 690 F.3d 1017, 1030 (8th Cir. 2012). In doing so, the Eighth Circuit relied on both *Serna* and *Florence*. *Id.*

Here, taking Plaintiff's well-pleaded allegations as true, as the Court must at this stage, the Court concludes Plaintiff's search was reasonable. Defendants performed a strip search on Plaintiff only after Plaintiff refused to cooperate with a significantly less

invasive pat search, a practice she does not challenge. Refusing to submit to a routine pat search itself raises suspicion—certainly more individualized suspicion than finding an unattended, empty phone case in a common area to which more than 150 people had access. *See Serna*, 567 F.3d at 946–47. Before officials performed the strip search of Plaintiff, they moved her to the privacy of her own room. Indeed, they went out of their way to do so; they were forced to use a litter to help transport Plaintiff, who was uncooperative. Plaintiff's noncooperation necessarily required those performing the search to make physical contact with Plaintiff. If an individual does not manipulate his or her own body to facilitate a search, some degree of physical contact is necessary to complete any effective search. *Cf. Arruda v. Fair*, 710 F.2d 886, 889 (1st Cir. 1983) (Maletz, J., concurring in part and dissenting in part) (describing that when the prisoner-appellant "cooperate[d]" with strip search procedures there was no physical contact during the course of the search). Despite Plaintiff's noncooperation she did *not* allege Defendants intruded into her body. *See United States v. Fowlkes*, 804 F.3d 954, 961 (9th Cir. 2015) (distinguishing between "visual cavity searches that do not require physical entry into a prisoner's body" and "physical cavity searches" that do). As in *Serna*, Defendants performed the search privately and safely.[5]  567 F.3d at 955.

---

[5] Unlike *Serna*, the comment Plaintiff alleges a Defendant made during the strip search was unprofessional. *See* 567 F.3d at 955 (describing the search as conducted "professionally"). But, the uncalled-for comment aside, Defendants conducted the search professionally. The Court concludes the comment did not violate Plaintiff's rights under the Constitution. *See Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) ("Name calling is not a constitutional violation."); *Patton v. Przybylski*, 822 F.2d 697, 700 (7th Cir. 1987) (noting the use of a "derogatory racial epithet" directed toward detainee, while "unprofessional and inexcusable," was not a constitutional

- 10 -

Considering all the circumstances described in Plaintiff's Complaint, the search Plaintiff underwent, though surely unpleasant, was not unreasonable.

But even if the Court concluded the search was unreasonable—that the search violated the Fourth Amendment—Plaintiff's Fourth Amendment claim still would be subject to dismissal because Defendants are entitled to qualified immunity on the claim. *See Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam) ("The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." (internal quotations omitted)); *see also* 28 U.S.C. § 1915(e)(2)(B)(iii). Plaintiff has not alleged facts to support a plausible claim that the strip search violated her clearly established constitutional rights.

*Serna*, *Beaulieu*, and *Florence* all upheld the constitutionality of the strip searches at issue. Neither they nor any other binding case the Court has located clearly established that the strip search performed on Plaintiff violated the Fourth Amendment. To be sure, each case, to varying degrees, expressed reservations about the strip search involved or about strip searches more broadly. *See, e.g.*, *Serna*, 567 F.3d at 955 (calling it "a close question of constitutional law"); *Beaulieu*, 690 F.3d at 1030 (concluding the searches were "not unreasonable" but seeming to couch the conclusion "under the

---

violation). Nor did the alleged comment transform an otherwise reasonable search into a clearly unreasonable one. *See Dawson v. Anderson Cnty.*, 566 Fed. App'x 369, 371 (5th Cir. 2014) (concluding that "laughter and taunts" during a strip search the court deemed otherwise reasonable did not "combine to overcome" defendants' qualified immunity).

- 11 -

specific facts of this case"); *Florence*, 566 U.S. at 338–39 (plurality opinion) (discussing several "concerns" around searches that were "unnecessary to consider" since they were "not implicated on the facts of this case"). But the most Plaintiff-friendly characterization the Court can make about the search Plaintiff underwent is that it raises a somewhat close constitutional question. "The very fact that a question is close," though, "strengthens [Defendants'] qualified immunity defense by indicating that the law was not clearly established in [P]laintiff's favor." *Batistini v. Aquino*, 890 F.2d 535, 538 (1st Cir. 1989). Defendants here "were not on clear notice that the aspects of the search to which [Plaintiff] objects—examined individually or taken together—contravened the Fourth Amendment." *See Story v. Foote*, 782 F.3d 968, 973 (8th Cir. 2015). Therefore, Defendants are entitled to qualified immunity. *See City of Tahlequah v. Bond*, 595 U.S. 9, 12 (2021) (per curiam) (explaining that in the Fourth Amendment context, it is "especially important" that the rule's contours were so well defined that it would have been clear to a reasonable official that his conduct was unlawful in the situation).

    c.    <u>Additional Ground for Dismissal</u>

Besides Plaintiff's claims failing on their merits and Defendants' qualified immunity, Plaintiff's action faces another hurdle, 42 U.S.C. § 1997e(e). That statute provides:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury

suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of title 18).

*Id.*[6]  To avoid this statutory bar, then, Plaintiff must have alleged "more than mental or emotional injury." *McAdoo v. Martin*, 899 F.3d 521, 525 (8th Cir. 2018); *accord Smith v. Moody*, 175 F.3d 1025 (8th Cir. 1999) (unpublished per curiam) ("After carefully reviewing the record, we conclude dismissal was warranted because [the plaintiff] failed to allege any physical injury in his complaint."). But Plaintiff failed to allege more than mental or emotional injury.

Plaintiff delineated all her alleged injuries, and they all are mental or emotional. Doc. [1] at 52–55. Plaintiff then carefully laid out the money damages she requested, tying each one to her specifically alleged mental or emotional injury. *Id.* at 56–60. Plaintiff demanded neither nominal nor punitive damages. Indeed, she requested no

---

[6] Plaintiff currently is a "prisoner" as that term is defined at 42 U.S.C. § 1997e(h). The Court recognizes that precedent establishes that Plaintiff was not a "prisoner" as that term is used in § 1997e when she was civilly committed to SMMHC. *See Perkins v. Hedricks*, 340 F.3d 582, 583 (8th Cir. 2003) (per curiam). While the text of § 1997e(e) limits its application to actions brought by current prisoners, it does not limit it to claims that arose while they were prisoners. *See id.* § 1997e(e). Rather, the subsection applies to injuries the litigant suffered "while in custody." *Id.* Individuals can be "in custody" without being a "prisoner" as the term is defined in § 1997e(h). *See, e.g.*, *O'Connor v. Donaldson*, 422 U.S. 563, 564 (1975) (referring to a "civilly committed" respondent as having been "kept in custody" at the state hospital "against his will for nearly 15 years"); *Youngberg v. Romeo*, 457 U.S. 307, 329 (1982) (Burger, C.J., concurring in the judgment) (referring to "the State's custody of respondent," an involuntarily committed individual); *Oliver v. Roquet*, 858 F.3d 180, 185 (3d Cir. 2017) (referring to plaintiff, "a sexually violent predator with a long history of convictions for both sexual and non-sexual offenses," as having "been civilly committed to state custody for treatment"); *Rubio v. Davis*, 907 F.3d 860, 863 (5th Cir. 2018) (holding petitioner "was 'in custody' under [a] civil commitment order" when he filed his petition under 28 U.S.C. § 2254); *see also, e.g.*, *United States v. Henley*, 984 F.2d 1040, 1042 (9th Cir. 1993) (holding suspect who had been handcuffed and placed in the back of a police car was "in custody" though he had not yet been formally arrested).

other remedy. *See* Fed. R. Civ. P. 8(a)(3) (providing that, in order for a pleading to "state[] a claim for relief," it "must contain" a "demand for the relief sought"); *see also Royal v. Kautzky*, 375 F.3d 720, 722–23 (8th Cir. 2004) (holding § 1997e(e) does not bar recovery of nominal and punitive damages such that the plaintiff "was free to seek" them); *cf. Uzuegbunam v. Preczewski*, 592 U.S. 279, 141 S. Ct. 792, 802 (2021) (holding a plaintiff's *request* for nominal damages can satisfy the redressability element of standing). Plaintiff alleged only mental and emotional injuries and, for them, requested only compensatory damages.

In addition, Plaintiff's action does not fall under either exception in § 1997e(e)'s text. *First*, she has not shown "a prior physical injury." True, Plaintiff alleged that she has suffered "health problems" as a result of the events at issue in this action, citing high blood pressure. But the Court concludes that her high blood pressure does not constitute a "physical injury" under § 1997e(e). *See Todd v. Graves*, 217 F. Supp. 2d 958, 960 (S.D. Iowa 2002) (finding raised blood pressure was not a physical injury sufficient to withstand the operation of § 1997e(e)). Further, given that Plaintiff "refused" her medication for her high blood pressure in the hope it would "help [her] to end things," see Doc. [1] at 55, her high blood pressure is a subsequent physical manifestation of stress, which therefore cannot constitute a *prior* showing of physical injury. *See Davis v. District of Columbia*, 158 F.3d 1342, 1349 (D.C. Cir. 1998) (finding that "the explicit requirement of § 1997e(e) that the physical injury be 'prior,' and the statutory purpose of discouraging frivolous suits, preclude[d] reliance on the

somatic manifestations of emotional distress [the plaintiff] allege[d]"). *Second*, the definition of "sexual act" in 18 U.S.C. § 2246 makes it clear that—even if the Court accepted Plaintiff's more lurid conclusory characterizations of the strip search, which it does not—Defendants actions do not constitute the "commission of a sexual act." *Cf. United States v. Starr*, 486 F. Supp. 2d 940, 947 (N.D. Iowa 2007) (opining that the statutory definition of "sexual act" does not perfectly accord with the "commonsense definition" of it), *aff'd*, 533 F.3d 985 (8th Cir. 2008); *compare* 18 U.S.C. § 2246(2) (defining "sexual act"), *with* 18 U.S.C. § 2246(3) (defining "sexual contact").

For the reasons explained in this subsection, Plaintiff cannot bring this "Federal civil action." *See* 42 U.S.C. § 1997e(e). For this additional reason, Plaintiff's action fails to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

## CONCLUSION

For all the reasons explained herein, the Court will enter herewith an Order of Dismissal, dismissing Plaintiff's action with prejudice, pursuant to 28 U.S.C. § 1915(e)(2)(B).[7] Her Motion to Appoint Counsel therefore is moot.

Accordingly,

---

[7] In Plaintiff's Complaint, she indicated that "[t]o the best of [her] knowledge," she had never had a case dismissed under 28 U.S.C. § 1915. Doc. [1] at 64. On review, that appears to be incorrect. *See, e.g.*, *Bemboom v. Heyer*, 2:14-cv-04129-BCW, ECF No. 6 (W.D. Mo. June 03, 2014) (dismissing plaintiff's action "with prejudice, for failure to state a claim, and as legally frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)([i])"). In any event, because a future court likely would hold that this dismissal counts as a strike under 28 U.S.C. § 1915(g), see *Gonzalez v. United States*, 23 F.4th 788, 791 (8th Cir.), *cert. denied*, 142 S. Ct. 2837 (2022), Plaintiff should include a reference to this case in the appropriate section of the Court's pro se form complaint if Plaintiff files any future actions while a prisoner.

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Appoint Counsel, Doc. [3], is **DENIED** as moot.

Dated this 1st day of March 2024.

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE